IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:09-CR-181-02 (CAP) (GGB) |
| | ) | |
| MARVIS NICHOLE HARRIS. | ) | |
| _____ | ) | |

**OBJECTIONS TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATIONS**

COMES NOW MARVIS NICHOLE HARRIS, by and through the undersigned attorney, pursuant to 28 U.S.C. §636 (b)(1), and files these objections to the Magistrate Judge's Report and Recommendation (Doc. 60). Ms. Harris objects to the Magistrate Judge's findings of fact and conclusions of law made in response to her Motions to Suppress Evidence (Doc. 24 and Doc. 25). The Defendant files these objections, in part, for purposes of preserving these issues on direct appeal.

**I)** *Report & Recommendation regarding Motion to
Suppress Evidence Seized from Vehicle (Doc. 24).*

The magistrate judge correctly refused to adopt the government's alternate theory that Ms. Harris' vehicle was searched lawfully under the inventory exception. (Doc. 60-9). Likewise, the magistrate judge correctly found that Ms.

Harris was under arrest in the hotel room and Mr. Pruitt was hand-cuffed on the ground, thus - "the search incident to arrest was lawful only if it was reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle." (Doc. 60-10). However, contrary to the magistrate judge's finding (Doc.60-15), Ms. Harris maintains the officers had no information or reasonable belief that the vehicle would contain evidence related to the crime of arrest: prostitution. (*Id.*)

*A) The officers lacked probable cause to believe the vehicle would contain additional evidence of the crime for which the defendants were arrested.*

All evidence related to the specific crime and act of prostitution, that is generally speaking - sex for money, was seized already in the hotel room. Incident to the arrests of Ms. Harris and M.C.[1], the officers seized a cell phone which bore the same phone number as that listed on the Craig's List add for Sexy Red. This was the telephone number Summers had called earlier that evening to set up the sex-date. (Doc.45-27,29). Agents also seized a small black bag from M.C. which contained condoms and lubricant. (Doc.45-27). Prior to Officer Mayberry searching vehicle, the police had no reason to believe or suspect that they would

---

[1] M.C. told police that she was 19 years old. The Craig's List add for Sexy Red listed her age to be 19. Ultimately, M.C. told police she was only 17 years old. Under Georgia and Sandy Springs' statutes, a person of **17 is an adult** and thus M.C. was charged with violating the Sandy Springs' prostitution statute.

2

find a camera, Blackberry or a computer therein located.  Prior to searching the vehicle, law enforcement was unable to articulate what additional evidence of this crime of prostitution, they expected to recover by searching the car.

The officers had seized the "tools" of the would-be crime: the body of M.C., some condoms and lubricant.  None of the officers provided any specific testimony to support a probable cause determination that additional evidence of the crime would be found in the vehicle.  Ms. Harris was arrested upstairs in a hotel room for solicitation of sex in a public place.  Based on the facts of the arrest and the evidence already seized in the hotel, there was no reason to believe that the vehicle contained additional evidence of the offense of arrest.

The officer's possessed no information to make the search of the passenger area of the vehicle "reasonable" as a search incident to the arrest of Ms. Harris, M.C. or Mr. Pruitt.  There was no smell of marijuana emanating from the vehicle. This case did not involve a delivery or pick up of drugs or drugs money as in *United States v. Rodriguez*, 198 F. App'x. 842, 844-45 (11th Cir. 2006)(unpublished op.)  There were no other females or suspected prostitutes in the vehicle.  The transaction and crime involved in this case was one of services, not goods. Admittedly, Ms. Harris received $300 for the services to be provided by M.C., however she never reentered her vehicle.  She was arrested at the hotel room, thus

there was no way in which the under-cover provided funds would be found in the vehicle. There was no evidence or suspicion that the car contained contraband. There was no probability that the car contained additional evidence of Pruitt's crimes, including parking illegally in a handicapped space. The agents lacked authority to search the passenger compartment and its containers incident to the arrests. Furthermore, there was no exigency as the police had taken custody of the vehicle which was located in a private parking lot.

Yes, as the magistrate judge wrote, "The officer who arrests a man on a criminal charge should consider the *nature of the charge . . .*" in determining whether it was reasonable to believe additional evidence of that crime would be located in the vehicle. (Doc.60-15). However, in this case, that very nature of the charge combined with the evidence already seized, made it highly unlikely that additional evidence would be recovered in a search. In support of its conclusion that the officers could reasonable believe evidence relevant to the Defendant's arrest for a prostitution offense would be in the vehicle, the Magistrate Judge incorrectly relied on the following assumptions (Doc.60-17)( listed below as ¶¶ "a-e"):

> a) At the very least, the officers had reason to believe that the vehicle would contain some evidence of Defendant Pruitt's identity or the location from which

> the prostitution business operated. His identity had not
> been established by his arrest because he failed to
> produce a driver's license.

With all due respect, this finding is without basis in fact or logic. If there was additional evidence of Pruitt's identity in the car, such was not relevant to proving the crime. Furthermore, the officers had ordered Pruitt out of the car and onto the ground. (Doc.45-104,105). Police cannot be allowed to create probable cause to go into the car (to get a i.d.), simply by removing the driver from the vehicle before he can produce it. There was no suggestion that Pruitt provided a false name. In fact, he was completely cooperative and truthful. He disclosed that there was a firearm in the trunk.

> b) Also, the officers could reasonably conclude that
> Defendant Pruitt needed to remain in communication
> with Defendant Harris and M.C. in order to pick them up
> when their appointment was over, and would therefore
> have a cell phone in his car.

This finding, if upheld, allows police to search any car at any time a suspected accomplis is arrested. In 2009, almost every citizen in America possesses a cell phone. This search cannot be justified or authorized upon such an un-particularized basis. Every defendant in every case possesses a cell-phone. A magistrate or higher level judge would never issue a search warrant based upon such a nonspecific and general allegation.

> c) In addition, it was reasonable to believe that the
> vehicle would contain supplies used in the prostitution
> business such as, and in addition to, the condoms and
> lubricant which Harris said that M.C. had in her
> possession.

How much lubricant and how many condoms did this prostitute need ? There simply was no evidence to believe the vehicle would contain more of such evidence. Likewise, the above was not a rational leap to make, given that a bag of such materials was already seized inside the hotel room. As the parties are aware, and the Court may note, many prostitutes operate "on foot," without any access to a vehicle. (*See generally United States v. "Sir" Charles Pipkins*, 378 F.3d 1281 (11th Cir. 2004) (prostitutes walking on Stewart Avenue, also known as "the track".) A car is not an integral component of the crime of prostitution. In fact, the criminal act requires very little in terms of physical materials. Precisely such low start-up costs and low capital requirements have made it what some call "the oldest profession in the World."

> d) It would also be reasonable to expect that the vehicle
> would contain cash from past appointments and
> documentation regarding previous or future
> appointments, especially since there was evidence that
> Pruitt's vehicle had been at the hotel earlier in the
> evening and the business was advertised on the internet.

First, Defendant Harris contests the allegation that the same vehicle was

present at the hotel earlier in the evening. Such testimony from Officer Mayberry was not credible as it contradicted all other evidence (just like his last-minute-recalled "consent to search" was not credible[2]). If Ms. Harris were in the area at 6:30, at the exact same hotel, she would have arrived back at the scene much earlier and not gotten lost on the way. Officer's Mayberry's testimony on this subject was unbelievable as he claimed he ran the tag on the vehicle and it came back registered to *Mr. Pruitt*, yet, in truth, the vehicle was registered solely to Ms. Harris[3]. (Doc.45-97,126.)

Additional to the credibility concerns, even if the testimony were true, there was no evidence that this vehicle was involved with other acts of prostitution and no reason to believe it would contain evidence of such activity.

> e) Finally, Defendant Pruitt's admission that there was a gun in the trunk of the vehicle provided some support that the vehicle was being used for criminal purposes.

There is no evidence to support this conclusion. There was no evidence, allegation or suspicion that Pruitt was a convicted felon (he's not) or allegation that a firearms-related crime had been committed. In the South, countless

---

[2] (Re: Alleged consent, see Doc.45-105-106;140-141. It is noteworthy that the Government, honorably elects not to attempt to justify this as a consent search despite such testimony from the officer. See Governments brief at (Doc. 49-27-28, footnote 9).

[3] Vehicle was registered to Ms. Harris. (Doc.45-112-113; Gov. Ec #6).

citizens transport their firearms in the trunks of their cars, LEGALLY. Admitted presence of a gun in trunk, in no way creates an inference that the vehicle was being used for criminal purposes. As noted by the Supreme Court in *District of Columbia v. Heller,* there exists a historic right of the people to protect themselves:

> [T]he inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose.

*District of Columbia v. Heller*, 128 S.Ct. 2783, 171 L. Ed.2d 637 (2008).

In summary, the officers lacked a reasonable belief that there would be evidence of prostitution found in the vehicle. All evidence from that search should be suppressed.

**II)** ***There was not probable cause to arrest Ms. Harris as charged.***

Ms. Harris' activities did not meet the statutory definition of the Sandy Springs prostitution ordinance. Defendant objects to the conclusion, (Doc. 60-18), of the magistrate judge finding there was probable cause to arrest Ms. Harris for other violations under Georgia law. Furthermore, the government should not be allowed to expand to scope of the arrest to justify the search of the vehicle. At most, without conceding, Defendant maintains the scope of any search is limited

to evidence related to the offense charged. Thus, the officers did not have authority or probable cause to search to camera, computer or Blackberry devices found in the vehicle as such items might be relevant to the federal charges now pending, but were not relevant to the Sandy Springs ordinances.

### III) *The Search of Ms. Harris and Mr. Pruitt's Residence.*

The magistrate judge recommends denying Defendant's motion (Doc. 25). The government has agreed not to introduce evidence from this residence search in its case. For the record, Ms. Harris maintains that the search of her residence was illegal and all evidence seized therefrom should be suppressed.

WHEREBY, MARVIS NICHOLE HARRIS asks this Court to grant her objections to the Magistrate Judge's Report and Recommendation asks that her

underlying motions to suppress (Doc. 24 & 25) be granted in full.

Dated: This 22nd day of October, 2009.

Respectfully submitted,

*s / L. Burton Finlayson*

L. BURTON FINLAYSON
Attorney For MARVIS NICHOLE HARRIS
Georgia Bar Number: 261460

LAW OFFICES OF
L. BURTON FINLAYSON
ATTORNEY AT LAW
931 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306
(404) 872-0560
lbfcourts@aol.com

# CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing Report and Recommendation Objections with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to the following:

>Mr. Richard Moultrie, Jr., and
>Ms. Nekia S. Hackworth
>Assistant United States Attorneys
>600 Richard B. Russell Building
>75 Spring Street, S. W.
>Atlanta, Georgia  30303

DATED:  This 22nd day of October, 2009.

>*s/ L. Burton Finlayson*
>
>L. BURTON FINLAYSON
>ATTORNEY FOR MARVIS NICHOLE HARRIS
>State Bar Number: 261460