IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 1:09-CR-181-02 (CAP) |
| ) | |
| MARVIS HARRIS ) | |
| _____ ) | |

**SENTENCING MEMO**

COMES NOW MARVIS HARRIS, by and through the undersigned counsel, and files this SENTENCING MEMO to be considered by this Honorable Court in conjunction with her Presentence Report and all objections thereto, the Government's motion for reduction of sentence pursuant to USSG § 5K1.1 and the arguments and evidence to be put forth at her sentencing hearing on THURSDAY August 5, 2010. Ms. Harris asks that this information be used to fashion a sentence which comports with the requirements of 18 U.S.C. §3553 and is otherwise reasonable. Specifically, Ms. Harris asks that she be given a total custodial sentence of **Twelve (12) months and one (1) day.** In support of such sentence, Ms. Harris submits the following:

**(i)** *Background:* MARVIS HARRIS is now a 27 year old woman. When she was

3, her parents divorced and her mother moved from Camp Lejune, N.C. to Atlanta. When she was 8, she was molested by her visiting alcoholic Marine father. Throughout her childhood, Ms. Harris was left frequently with her "aunt[1]" as her mother was distracted by drug addiction and her own life as a stripper at Atlanta's infamous "Gold Club."

When Ms. Harris was 15, she left home to live with a 25 year old boyfriend. This boyfriend was abusive and the couple broke-up. After the break-up, Ms. Harris became distraught and clinically depressed. Much of her depression was due to the fact that she had no means of supporting herself and no stable environment which to return. In July of 1999, at the age of 16, she tried to kill herself. Ms. Harris was admitted into Georgia Regional Hospital and diagnosed with a depressive disorder. After her release from Georgia Regional, Ms. Harris began selling her body to support herself. When Ms. Harris was 17, a "benefactor" / pimp named "Reb" got her a job (and a permit) to work as a stripper in the similarly infamous "Club Nikki."

From the age of 16 until her arrest in this federal case, Ms. Harris worked in the sex-industry as a stripper, prostitute, or both. It is of no surprise that Ms. Harris developed drug and alcohol addictions. A life of stripping and prostitution

---

[1]Actually a cousin.

is much more bearable when one is drunk, stoned or high$^2$.

Since her arrest on this federal case on **April 16, 2009**, Ms. Harris has been successful in leaving her previous life-style behind. She has quit working in the sex-industry. She now cleans office buildings. She no longer drives or owns her nice car, but she has remained clean of illegal drugs. Ms. Harris has successfully completed a counseling program at the Atlanta Psychological Associates, as directed by the United States Pretrial Services Program. She has complied with the rules and conditions of HOME DETENTION and G.P.S. monitoring for over 1 year and 3 months. Ms. Harris has cooperated with the federal authorities in the

---

$^2$A study of 200 street prostitutes documented a high prevalence of alcohol and drug abuse in their family of origin, during the drift into prostitution and as part of prostitution. Additionally, the study documented a high prevalence of substance abuse among the child molesters and rapists of the subjects. The existence of a relationship between substance abuse and prostitution in and of itself does not imply causality. It is not clear whether substance abuse is one of the factors that pushed these women into prostitution (as noted earlier, 55% of the subjects reported being addicted prior to their prostitution involvement) or whether it was prostitution that caused their drug involvement (30% became addicted following and 15% concurrently with their prostitution involvement). Most likely, **both prostitution and substance abuse are the behavioral translations of these women's endless cycles of victimization and severely disturbed backgrounds, as well as an expression of the self-destructive pull, the sense of hopelessness, helplessness, negative self-concept and psychological paralysis reported by almost every subject in the study.** (Emphasis added)

*Substance abuse and prostitution*, Silbert MH, Pines AM, Lynch T.

http://www.ncbi.nlm.nih.gov/pubmed/7143150or

prosecution of her codefendant / pimp LAWRENCE PRUITT. She agrees to provide any other assistance as requested by the government, including participating in out-reach programs or speaking to groups of at-risk adolescents.

**SENTENCING GUIDELINE ISSUES**

**I) a)** *This case is about the illegal prostitution of a 17-year-old. This is not a child pornography case*.

In the presentence report ("PSR"), the probation officer recommends that Ms. Harris' case be governed by USSG § 2G2.1, the guideline section which applies to child pornography cases. This application is incorrect. The heading accompanying § 2G2.1 indicates the guideline is for cases involving "Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Materials; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertising for Minors to Engage in Production." These are all activities related to the production of child pornography, not prostitution involving a minor.

Ms. Harris was convicted under Title 18 USC §371 only for conspiracy to recruit and transport a minor to engage in a commercial sex act. The underlying object of the conspiracy would be a violation of Title 18 USC § 1591, however Ms. Harris was not convicted of a violation of Title 18 USC § 1591.

4

Nothwithstanding this, USSG §2X1.1 does direct the Court to consider the guideline for the underlying substantive offense.  However, USSG § 2G2.1 is the incorrect section.

"APPENDIX A" to the Sentencing Guidelines dictates that a violation of Title 18 USC § 1591 may be governed by USSG §§ 2G1.1, 2G2.1 or 2G1.3.  The Introduction to "Appendix A" includes the following language:

> If more than one guideline section is referenced for the particular statute, use the guideline **most appropriate for the offense conduct charged in the count of which the defendant was convicted**. (Emphasis added).

Ms. Harris was convicted of conspiring to transport a minor to engage in a commercial sex act.   She was not charged with any offense related to the production or possession of child pornography.  Although the case did involve publication of a photograph of "M.C." on the internet for purposes of advertisement, such publication was incidental to the commission of the prostitution offense.   The images were not presented as child or "kiddie porn."  In fact "M.C." was listed on the internet as being 19 years old.  At no time in this case were efforts made to market or pander to the pedofile market.  The opposite

was true. The defendants and "M.C." herself[3], tried to pass her off as an adult.

**b)** ***Why Do We Have USSG §2G1.3 ?***

Section 2G1.3 applies to cases involving *Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor*; *Transportation of Minors to Engage in a Commercial Sex Act* or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibits Sexual Conduct with a Minor; *Sex Trafficking of Children; Use of Facilities to Transport Information about a Minor*." (Italics added). Under § 2G1.3(b)(3), there is a 2 level increase for defendants such as Ms. Harris who use a computer to "entice, offer or solicit persons to engage in prohibited sexual conduct with a minor." *Id.*

Under the interpretation of the Guidelines suggested by the probation officer, and presumably the government,[4] there is no reason for §2G1.3 to exist if every prostitution case which uses a computer to advertise the minor will be sentenced as a child pornography case and subjected to the higher penalties of §2G2.1. To put it another way, if the probation officer's position were correct, the Sentencing Commission did not mean what is said in promulgating USSG § 2G1.3(b)(3) , as

---

[3] When "M.C." was arrested along with the defendants by the Sandy Springs Police on February 21, 2009, she lied about her age to the police and the FBI, telling them that she was an adult. (Suppression Hearing Transcript, Doc No. 45 @ p. 56.)

[4] In the plea agreement the government indicated it would recommend application of USSG §2G2.1, however, Ms. Harris never agreed to such terms.

6

there are NO cases to which it would apply.

Ms. Harris' argument is furthered by the fact that USSG §2G1.3, explicitly references conviction under 18 USC § 1591: "Base Offense Level [is] 34 if the defendant was convicted under 18 USC § 1591(b)(1), [and] Level 30, if the defendant was convicted under 18 USC § 1591(b)(2)." USSG §2G1.3(a)(1 & 2). Again, there is no purpose for the Sentencing Commission to include such references if all child prostitution cases which use a computer are to be sentenced as child porn cases. Ms. Harris was not convicted under 18 USC §1591(b)(1) or (b)(2), 18 USC § 2422(b) or 18 USC § 2423(a). Pursuant to USSG §2G1.3(a)(4), **the correct base offense level is 24.**

Furthermore, as shall be discussed below, under either §2G 2.1 or §2G1.3, the Sentencing Guidelines impose significant enhancements for conduct which is present in virtually all cases. In this case under either guideline, Ms. Harris receives 2 levels for "use of a computer," which is an enhancement **applicable in 97.2% of all cases**. *See United States v. Dorvee,* 604 F.3d 84, 96 (2nd Cir. 2010); United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009* 36-37. As the Second Circuit recently explained, "such enhancements produce a sentence approaching the statutory maximum, even for an offender with no prior record, based solely on

7

characteristics that are all but inherent to the crime of conviction, an approach fundamentally inconsistent with § 3553(a)." *Dorvee,* 604 F.3d at 96.

Ms. Harris and Mr. Pruitt were not distributors of child pornography. They were not in the pornography business. In reality, the use of a computer is a relatively inconsequential fact which should not be the linchpin to catapult Ms. Harris' final guideline range from 63-78 up to 188-245 months:

> The PROTECT Act of 2003 instructed the Commission to amend § 2G2.2 to include the number-of-images enhancements . . . . Notably, the Sentencing Commission was neither informed nor consulted on the passage of these changes, and the legislative history surrounding them offered no study or empirical justification for them. *See* Skye Phillips, *Protect Downward Departures: Congress and Executive's Intrusion into Judicial Independence*, 12 J.L. & POL'Y 947, 967-84 (2004).
>
> The Commission has often openly opposed these Congressionally directed changes. **For instance, the Commission criticized the two-level computer enhancement (which is currently set forth at § 2G2.2(b)(6) and was adopted pursuant to statutory direction) on the ground that <u>it fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users</u>**. *See* United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties*, June 1996, at 25-30, available at http://www.ussc.gov/r_congress/SCAC.PDF (last visited April 15, 2010).

*United States v. Dorvee,* 604 F.3d at 95.

**c)** ***The cross reference listed in § 2G1.3 further demonstrates that § 2G2.1 does not apply in this case.***

Specifically, section 2G2.1 should be applied "If the offense involved

8

causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct *for the purpose of producing a visual depiction of such conduct*." USSG 2G1.3 (c)(1)(emphasis added). In Ms. Harris' case, there was no intent or purpose to produce a visual depiction of the acts of prostitution with "M.C."

For the reasons listed above, the correct base offense level is 24. If applying the adjustments under USSG § 2G1.3 (b) (3) & (4) [use of a computer & commission of a commercial sex act], Mr. Harris would have a total offense level of 28. Three (3) levels are reduced for "Acceptance of Responsibility," with a final level of 25, Criminal History Category II, and an advisory range of 63-78 months.

**II)** *(Vulnerable Victim).* With all due respect to the victim, "M.C." was 17 years old, not 12. Under Georgia law, she was an adult in February of 2009. In fact, Sandy Springs charged "M.C." as an adult after arresting her for Prostitution, a violation of Sandy Springs Ordinance § 38-118(b). Before she met "Carlos," she was already dancing (naked) at private parties. "M.C." re-contacted "Carlos" and actively pursued the new career of prostitution, albeit with some hesitation. No one ever threatened or forced "M.C." to become a prostitute. When she was

arrested she possessed her personal cell phone. She could always have called her parents, friends or the police. When she was arrested, she lied about her age to the FBI. The level of parental guidance previously provided to this 17-year-old remains a matter of pure speculation. The only arguable vulnerability possessed by "M.C." is her young age. This factor is already taken into account by and incorporated into the base offense level for Promoting a Commercial Sex Act with a Minor. The vulnerable victim enhancement should not apply.

## DEPARTURES AND VARIANCE REQUESTS

**1.** *(The Government's* § *5K1.1 Motion).* The government is asking that Ms. Harris' sentence be reduced from 60 months to 48. Defendant asks that the government's 5K1.1 motion for sentence reduction be granted, however she submits that 48 months is not a reasonable final sentence, given her personal characteristics and the facts of the case.

**2. (*Criminal History*)** Pursuant to USSG § 4A1.3, Ms. Harris requests a lateral departure to account for the over-representation of her Criminal History Score. Her criminal record only contains a misdemeanor marijuana conviction and one felony for possession of cocaine. Category I more accurately reflects Ms. Clark's

true criminal history. Furthermore, given the interrelatedness of drug abuse and the stripper / prostitute professions, combined with Ms. Harris's horrific life-history, this Court can take into account (or forgive) such drug use as mitigation evidence under Title 18 USC §3553(a).

**3.** ***(Request for a Reasonable and Lower Sentence)***:

As authorized Title 18 USC § 3553 and *United States v. Booker*, 125 S.Ct. 738 (2005), Ms. Harris requests a sentence which is lower than the final advisory guideline range. The Guidelines in this case over-state Ms. Harris's culpability. Once a sentencing court reaches the final advisory Guideline range, that court must then attempt to impose a reasonable sentence. After considering these Guidelines, "the District Court may impose a more severe or more lenient sentence as long as the sentence is reasonable." *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005). A below-Guidelines sentence is assessed for reasonableness in light of the factors set out at 18 U.S.C. §3553(a). "These factors include available sentences, the applicable Guideline range, the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide the defendant with needed medical care." *United*

*States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005).

Although she is a defendant in this case who acted wrongly and broke the law, she is also very much a victim. It should not be forgotten that Mr. Pruitt also advertised and "sold" Ms. Harris on the internet. During the period of this crime, Ms. Harris also a worked as a prostitute. It was not just easy money obtained from the commercial sex acts of others. Ms. Harris is a "text-book" example or archetype of the young woman who becomes a prostitute. She was born to drug-addicted mother who was a stripper at the Gold Club. Her parents were divorced. When her alcoholic Marine father did visit, he molested her. At 16 with no skills and no means of support, she was suicidal and hospitalized in Georgia Regional Hospital with a depression disorder. At 17, she was selling her body and soon stripping for "Reb" at "Club Nikki."

> It shouldn't be surprising that a large number of women in sex work were sexually abused as children.
>
> Becoming a prostitute at age 14 felt almost natural to Chicago resident Brenda Myers, who now is one of the leaders of a group called Exodus that helps women leave sex work. Growing up on the south side of Chicago, Myers used to see prostitutes outside her window all the time. Often, they looked glamorous and mysterious. When she found out what they were doing, it didn't sound any worse to her than experiences that were being forced upon her already. "I asked my grandmother what those women were doing," she said. "She said, 'They take their panties off for money.' Well I was already

12

being forced to take my panties off, and I wasn't getting any money."

A 1995 study by the National Criminal Justice Reference Service (NCJRS) found that people who were sexually abused as children are a whopping 27.7 times as likely as others to be arrested for prostitution.

While many sex workers do see their work as empowering and feminist, the reality is that **the vast majority of sex workers are doing it for the money, often to feed drug habits, often because they feel they have no other viable employment opportunities.**

All of the respondents in the New York study listed finances as their reason for getting into sex work. The majority of respondents (22 of 30) also listed substance abuse as the reason for turning to sex work, and the Chicago study showed that almost all sex workers were substance abusers and almost all increased their use of alcohol and drugs while engaging in sex work, creating a vicious cycle where working to earn money to satisfy their habit only increased their habit.

Both the Chicago and New York studies offer recommendations for better ways for law enforcement and community institutions to deal with prostitution. The suggestions sound like common sense – offer sex workers meaningful supportive services, including job training, affordable housing, health care and counseling. Start treating sex workers like human beings with civil and human rights, rather than criminals. And don't forget to address the problem at the source: the portion of the customer base who are eager to pay to exploit and abuse sex workers.

*Sex Workers and Civil Rights*, Kari Lydersen, AlterNet July 18,

2003. Http://www.rapeis.org/activism/prostitution/sexworkerscivilrights.htm

     To state the obvious, Ms. Harris will not benefit from a lengthy prison sentence such as the 48 months requested by the government. Rather, she needs job training, affordable housing, health care and counseling. Given her tragic personal characteristics and history, Marvis Harris should be treated like a human being with civil and human rights, rather than housed as a criminal.

**4.** *(The 2 Level Enhancement for Use of A Computer Is Not Rationally Based, and any Sentence Based Upon Such is Not Reasonable*.)

     Ms. Harris received 2 levels for "use of a computer," which is an enhancement **applicable in 97.2% of all cases**. *See United States v. Dorvee,* 604 F.3d 84, 96 (2nd Cir. 2010); United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009* 36-37. As the Second Circuit recently explained, "such enhancements produce a sentence approaching the statutory maximum, even for an offender with no prior record, based solely on characteristics that are all but inherent to the crime of conviction, an approach fundamentally inconsistent with § 3553(a)." *Dorvee,* 604 F.3d at 96.

     Although *Dorvee* was an (actual) child porn case, as opposed to a case involving prostitution of a minor, the rationale is applicable to Ms. Harris' case. Put bluntly, the guidelines as calculated by the probation officer are insane. Even

14

under the defendant's proposed application of § 2G1.3, the guidelines are near the statutory maximum of 60 months. Under the facts of this case, such a result is not appropriate or required. This Court can and should vary from the guideline range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses, (those who use computers during the commission of their offense).

> The Sentencing Commission is, of course, an agency like any other. **HN14** Because the Commission's Guidelines lack the force of law, as the Supreme Court held in *United States v. Booker*, 543 U.S. 220, 245, 264, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), sentencing courts are no longer bound to apply the Guidelines. But, in light of the Sentencing Commission's relative expertise, sentencing courts "must consult those Guidelines and take them into account when sentencing." *Id*. This deference to the Guidelines is not absolute or even controlling; [**35] rather, like our review of many agency determinations, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier [*98] and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944); *see Kimbrough*, 552 U.S. at 109 (citing the crack cocaine Guidelines as an example

of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role"). On a case-by-case basis, courts are to consider the "specialized experience and broader investigations and information available to the agency" as it compares to their own technical or other expertise at sentencing and, on that basis, determine the weight owed to the Commission's Guidelines. *United States v. Mead Corp.*, 533 U.S. 218, 234, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) (internal quotation marks omitted) (citing *Skidmore*, 323 U.S. at 139); *see Gall*, 552 U.S. at 51.

In keeping with these principles, in *Kimbrough*, the Supreme Court held that it was not an abuse of discretion for a district court to conclude that the Guidelines' [**36] treatment of crack cocaine convictions typically yields a sentence "greater than necessary" to achieve the goals of § 3553(a), because those particular Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough*, 552 U.S. at 109-10. As we have explained here, the same is true for the child pornography enhancements found at § 2G2.2. Following *Kimbrough*, we held that <sup>HN15</sup>"a district court may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." *Cavera*, 550 F.3d at 191. That analysis applies with full force to § 2G2.2.

> District judges are encouraged to take seriously the broad
> discretion they possess in fashioning sentences under § 2G2.2
> -- ones that can range from non-custodial sentences to the
> statutory maximum -- bearing in mind that they are dealing
> with an eccentric Guideline of highly unusual provenance
> which, unless carefully applied, can easily generate
> unreasonable results.

*United States v. Dorvee,* 604 F.3d at 97-98.

<u>     </u>For this reason alone, the Court should reduce Ms. Harris's sentence and vary downward by 2 levels to nullify the irrational enhancement for use of a computer.

**5.** *(Post-Offense Rehabilitative Conduct.)*

Ms. Harris has been successful in leaving the sex-industry behind. She now cleans office buildings (ironically) with her mother, who fights her own battle to stay clean of drugs. Ms. Harris lost her prized possession, her Chrysler 300 automobile, as she could no longer afford the payments. She left her boyfriend, LAWRENCE PRUITT and even cooperated against him. She has remained clean of illegal drugs and completed a year-long counseling program at the Atlanta Psychological Associates. She has complied with the rules U.S. Pretrial Services and the conditions of HOME DETENTION with G.P.S. monitoring for over 1 year

17

and 3 months. Ms. Harris has a young daughter, who lives with the same "aunt" who raised her. It is time for the cycle to be broken. Any extended period of incarceration for Ms. Harris will do little to promote this goal.

*<u>Designation</u>*: Ms. Harris requests a designation recommendation to an appropriate facility as close to her family in Atlanta as possible.

*<u>Voluntary Surrender</u>*: Ms. Harris also requests voluntary surrender.

WHEREBY, based upon the above, MARVIS HARRIS requests that this Honorable Court give her a total sentence of **one year and a day.**

Dated: This 3rd$^{nd}$ day of August, 2010.

Respectfully submitted,

*s/ L. Burton Finlayson*
_____
L. BURTON FINLAYSON
Attorney for MARVIS HARRIS
Georgia Bar Number: 261460

LAW OFFICE OF
L. BURTON FINLAYSON
ATTORNEY AT LAW
931 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306
(404) 872-0560

## CERTIFICATE OF SERVICE

This is to certify that the above document was prepared in 14 Point New Times Roman Font and that I have this day electronically filed the foregoing Memo with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to the following:

>Mr. Richard Moultrie
>Ms. Nekia Hackworth
>Assistant United States Attorney
>600 Richard B. Russell Building
>75 Spring Street, S. W.
>Atlanta, Georgia  30303.

    DATED:  This 3rd day of August, 2010.

>*s/ L. Burton Finlayson*
>_____
>L. BURTON FINLAYSON
>ATTORNEY FOR MARVIS HARRIS
>State Bar Number: 261460