IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA )
)
vs. ) Criminal Action No.
) 1:09-CR-00181-01-CAP
LAWRENCE PRUITT )
)
_____)

## SENTENCING MEMORANDUM

LAWRENCE PRUITT, through counsel, submits this Sentencing Memorandum to assist the Court in its determination of a reasonable sentence that is sufficient but not greater than necessary to comply with the directives of 18 U.S.C. § 3553(a) and of *United States v. Booker*, 543 U.S. 20, 125 S. Ct. 738 (2005).

ARGUMENT AND CITATION OF AUTHORITY

Mr. Pruitt pleaded guilty to Count Two of the Indictment. which charged that he had knowingly transported a minor to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a). Mr. Pruitt was arrested by agents of the FBI and a joint task force at the Hampton Inn in Sandy Springs, Georgia on February 21, 2009 as a part of an investigation into on-line advertisements for prostitution. *See* Pre-Sentence Report ("PSR") at ¶ 9. Mr. Pruitt was detained in the parking lot of the hotel after agents had arrested co-defendant Marvis Harris and a 17-year old minor in one of the hotel rooms for soliciting sex acts from an undercover agent. *See id*. at ¶ 9.

The Pre-Sentence Report calculates the applicable custody guideline range as 168-210 months based on a criminal history category of I and a total offense level of 35. *See* PSR Part D at p.12 ("Sentencing Options"). There is a mandatory minimum sentence of ten years. *See id*. In a negotiated plea agreement, the Government has agreed that the mandatory minimum is a reasonable sentence in this case. Through counsel, Mr. Pruitt respectfully contends that the Court should not give the guideline range deference. Mr. Pruitt also contends that a sentence of 120 months – the mandatory minimum – is appropriate in this case and is supported by a consideration of the Section 3553(a) factors.

I. After Calculation of the Applicable Range, the Court Must Consider the Factors of Section 3553(A) in Arriving at a Reasonable Sentence

    A. The Guideline Regime Is Advisory and but One Factor in the Section 3553(a) Analysis

The Sentencing Guidelines promulgated by the United States Sentencing Commission provide an advisory rather than a mandatory regime for determining sentences. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005) (citing *United States v. Booker*, 125 S. Ct. 738 (2005)). The Sentencing Commission's guideline ranges are but generalizations. *United States v. Hunt*, 459 F.3d 1180, 1184-85 (11th Cir. 2006). The Court should consult the Guidelines, but the resulting range is but one factor that the Court must consider in arriving at a reasonable sentence.

*Crawford*, 407 F.3d at 1178-79.

The Supreme Court has held that it is permissible for the courts of appeal to presume that a guideline sentence is, on appeal, reasonable. *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007). The Eleventh Circuit, however, does not utilize such a presumption. *Hunt*, 459 F.3d at 1184. But even for circuits that do, that presumption "applies only on appellate review." *Rita*, 127 S. Ct. at 2465.

Thus, although *Rita* approves the use of a presumption in those courts of appeals that have chosen to adopt it, *Rita* forbids district court from indulging a similar presumption that the advisory guideline range dictates the correct sentence. *Id*. ("the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"). The district court "may not abdicate to the Sentencing Commission its obligation to consider the factors under § 3553(a)." *United States v. Santoya*, 493 F. Supp.2d 1075, 1077 & n.4 (E.D. Wis. 2007). In its consideration of the Section 3553(a) factors, the court may determine that the guideline sentence:

> should *not* apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. *See* Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial

3

testing contemplated by federal sentencing procedure.

*Rita*, 127 S. Ct. at 2465 (emphasis added).

As *Rita* notes, guideline calculations expressly exclude consideration of certain offender characteristics. *Rita*, 127 S. Ct. at 2465; *see also Hunt*, 459 F.3d at 1184 n.4. And, as the Supreme Court articulated in *Gall v. United States*, 128 S. Ct. 586 (2007), extraordinary circumstances are not required to justify an outside of the guideline sentence. *Gall*, 128 S. Ct. at 595.

Significantly, the Eleventh Circuit and other courts of appeal have held that a sentence in the guideline range can produce an unreasonable result. *United States v. Hunt*, 459 F.3d at 1184 ("There are, however, many instances where the guideline range will not yield a reasonable sentence"); *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (en banc) (same); *United States v. Lazenby*, 439 F.3d 928 (8th Cir. 2006) (same). As the First Circuit explained in *Jimenez-Beltre*,

> the guidelines are still *generalizations* that can point to outcomes that may appear unreasonable to sentencing judges in particular cases. Some of the guidelines in particular cases were not reflections of existing practice but were deliberate deviations or turned tendencies into absolutes. Others have been affected by directions from Congress. *Booker*'s remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness.

*Jimenez-Beltre*, 440 F.3d at 518 (citation omitted).

Congress has mandated that the preliminary guidelines calculation be considered along with the other sentencing factors enumerated in Section 3553 of Title 18, a procedural requirement unaffected by *Booker* and its progeny. *See* 18 U.S.C. § 3553(a); *Hunt*, 459 F.3d at 1184. After calculation of the custody range, it is within the Court's discretion to sentence within that guideline, or to impose a more severe or more lenient sentence than the applicable range, "provided the resulting sentence is reasonable in light of the § 3553(a) factors." *United States v. Shelton*, 400 F.3d 1325, 1334 (11th Cir. 2005); *see also Gall*, 128 S. Ct. at 595.

The statutory sentencing factors that the Court must consider include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(2).

The ultimate command of Section 3553(a), however, is to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" subsection (a). *Id*. This parsimony provision requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. It is the parsimony provision that serves as "the guidepost for sentencing decisions post-*Booker*." United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006). Here, adherence to this overriding Congressional command will result in a sentence below the applicable guideline range and at the mandatory minimum of sixty months.

II.  The Court Should Not Give Deference to the Guidelines Here Because Consideration of the Nature of the Offense and the Need to Avoid Sentencing Disparities Counsels a Lower Sentence

A consideration of the nature of the offense indicates that a sentence beneath the Guidelines is appropriate. Although the criminal offense to which Mr. Pruitt pleaded guilty – knowingly transporting a minor to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a) – is one deserving of opprobrium, both the Government and Mr. Pruitt have agreed in a negotiated plea agreement that on the facts of this case, a sentence at the calculated range of 168 to 210 months is unreasonable, and that a sentence at the mandatory minimum is an appropriate sentence.

A.  The Facts of the Case Support a Sentence at the Mandatory Minimum

Several factors in this case counsel a sentence well beneath the calculated guideline range. First, the age of the victim should be considered by the Court in arriving at a reasonable sentence. Although the use of minors to commit sex offenses is clearly illegal and should be so, the fact that the victim in the instant case was within months of reaching majority makes this case distinct from one in which the victim is significantly younger. Additionally, it is respectfully suggested that even among 17 year olds, individuals differ radically in maturity and world experience.

Information concerning the victim contained in the Pre-Sentence Report

7

supports this conclusion. M.C. initially met an individual known to her as Carlos at a convenience store, with Carlos telling M.C. he could get her work as an escort or prostituting, at which point M.C. disclosed to Carlos that she had previously danced at parties. PSR at ¶ 10-11. Carlos provided his contact information to M.C. *Id*.

M.C. then took the affirmative step of contacting Carlos and indicating that she would work. *Id*. at ¶ 11. She arranged a meeting at the same convenience store where they had previously met, after which Carlos instructed her to inform others she was 19 instead of her actual age of 17. *Id*. at ¶ 11. All of this activity took place prior to Mr. Pruitt's involvement in the offense. *Id*.

M.C.'s conduct and the chronology of the events is noteworthy for two reasons: First, crediting her statements to the individual known as Carlos, it appears that M.C. had effectively emancipated herself as a minor prior to becoming involved with Ms. Harris and Mr. Pruitt. Although it does not in any way exonerate any of the charged defendants in the case, M.C.'s prior conduct and willingness to involve herself in the sex trade does distinguish her from less experienced and younger victims, and indicates that she was less likely to be subject to manipulation. Taken together with the fact that mere months later the crime could not be charged under the applicable code section – with the concomitant result that Mr. Pruitt would not be facing a mandatory minimum of 10 years – these factors indicate that the guideline sentence

is not reasonable.

Even should the Court disagree with this assessment of the significance of the victim's age or relative culpability, the uncontested chronology of events nonetheless indicates that Mr. Pruitt was not involved in the "recruitment" of M.C., but rather is guilty of the later in time knowing "transportation" of M.C. *See* 18 U.S.C. § 1591(a). While both offenses are sanctionable, the actions of the co-defendants reveals a difference in culpability that should influence the Court's sentencing decision. *See, e.g., United States v. Carpenter*, 280 Fed. App'x. 866, 868 (11th Cir. 2008) (unpubl'd decision) (rejecting sentencing disparity argument where district court properly accounted for differences in conduct among codefendants in determining period of supervised release).

The facts adduced by the Pre-Sentence Report and produced in discovery by the Government support the conclusion that the recruitment of M.C. was done by Carlos, and that much of her handling was done by Marvis Harris. Although some facts have been contested, Mr. Pruitt does not deny his guilt. However, but his role was significantly less than that of the unindicted co-conspirator or of Ms. Harris, most crucially providing transport for Ms. Harris and M.C. on the night all three were arrested. PSR at ¶ 13. Indeed, the Pre-Sentence Report concludes that "the unindicted co-conspirator received most of the money earned by 'M.C.' and is

9

considered the most culpable." *Id*. at ¶ 14.

  B.  Charging Mr. Pruitt with the Substantive Offense Has Lead to a Likely Sentencing Disparity Among Codefendants

The Government's charging decision in this case has had a dramatic and disparate effect on the likely sentences for Lawrence Pruitt and Marvis Harris. In spite of considerable evidence that Mr. Pruitt's participation in the conduct was significantly less than that of Ms. Harris, that Mr. Pruitt played a marginal role in an undertaking with which Ms. Harris and the unindicted co-conspirator had long-standing and professional knowledge, and that Mr. Pruitt obtained little to no money as a result of his involvement, the Government has persisted in its position that he is necessarily more culpable because his co-defendant is a woman. Counsel respectfully contends that assuming this is true of sex trafficking offenses generally, it is not an accurate assessment of the relative culpability of the actors in this case.

That Mr. Pruitt was a more culpable individual was the explanation provided by the Government from the inception of the case, when it moved for detention for Mr. Pruitt but did not for Ms. Harris, who was released on bond after her initial appearance. Doc. 10, 13. Following a detention hearing before Magistrate Judge Hagy, who ordered Mr. Pruitt released on a non-surety bond, the Government moved to stay his release pending appeal to this Court. Doc. 16, 17, 39, 40. At the bond

hearing before this Court, the Government contended that Mr. Pruitt was in fact a "pimp," whereas Ms. Harris was a "bottom bitch," or the top prostitute in a stable of sex workers. This Court denied the Government's motion, and ordered that the bond be issued as stated by Magistrate Judge Hagy. Doc. 22.

Because of the Government's charging decision, however, in which Mr. Pruitt is charged with a substantive violation of Section 1591 whereas Ms. Harris is charged in a conspiracy count only, Mr. Pruitt faces a mandatory minimum ten year sentence. Ms. Harris, who has pleaded to Count One, faces a maximum sentence of five years, in spite of what is no doubt a comparable guideline calculation. Given the statutory requirement, counsel is compelled to argue that a sentence in excess of the minimum would exacerbate this inappropriate disparity, and result in an unreasonable sentence. *See* 18 U.S.C. § 3553(a)(6) (Court shall consider the need to avoid unwarranted sentencing disparity); *cf. United States v. Lieberman*, 971 F.2d 989, 995 (3d Cir. 1992) (where prosecution charged Defendant with both tax evasion and embezzlement knowing they were not groupable, and other defendants not so charged, court can depart downward to ensure equality in sentencing even absent bad faith); U.S.S.G. , Ch. 1, Pt. A, (4)(a) Policy Statement ("a charge offense system has drawbacks . . . a sentencing court may control any inappropriate manipulation of the indictment through its departure power").

11

III. Consideration of the History and Characteristics of Mr. Pruitt Supports Imposition of the Mandatory Minimum Sentence

As the Supreme Court stated in *Koon v. United States*, 518 U.S. 81 (1996), "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Mr. Pruitt has acknowledged his guilt for the crime he has pleaded guilty to, and accepts full responsibility for his conduct. However, consideration of his life experience should mitigate his punishment.

Mr. Pruitt was born in Long Island, New York into a family of four children. *See* PSR at ¶ 40. His father was in the Army, and the parents were effectively separated from the time Mr. Pruitt was two, divorcing when he was ten. *Id*. at ¶ 40. Mr. Pruitt grew up in a full home, living with his mother, brothers, grandparents, an aunt, an uncle, and three cousins. *Id*. He had a strong upbringing with an emphasis on discipline and achievement. *Id*.

Because of demonstrated excellence in athletics, Mr. Pruitt got the opportunity to attend Maine Central Institute in Pittsfield, Maine after completing High School. *Id*. at ¶ 53. He moved to Georgia to attend Georgia Perimeter College on a basketball

scholarship, then went to Kennesaw State University. *Id*. at ¶¶ 54, 55. Unfortunately unable to juggle the twin commitments of athletics and academics, his grade point average suffered and he withdrew in May of 2005. Although he no longer plays sports, Mr. Pruitt has continued to pursue his education, and is currently enrolled at DeKalb Technical College in Clarkston, Georgia as a full time student. *Id*. at ¶ 56.

Mr. Pruitt has a criminal history score of zero, having no prior convictions, no juvenile adjudications; no other known criminal conduct; and no other known charges or pending arrests but for some minor traffic citations. *See* PSR at ¶¶ 31-38. His criminal history score does not adequately countenance this fact. A criminal history category of I would apply equally to a young adult with uncountable juvenile convictions; to a defendant who at the time of their federal sentencing faced other pending state charges of some magnitude; or to a defendant with a history of entanglement with law enforcement that had managed to avoid conviction. Although his criminal history category is based on the fact that Mr. Pruitt has no prior *convictions*, it does not account for the absence of other criminal conduct of any sort or the fact that but for the offense he has pleaded guilty to, he has otherwise been engaged in lawful behavior throughout his young life.

The Pre-Sentence Report notes the shock of Mr. Pruitt's mother and grandmother at learning of his conviction as well as their belief in him. *Id*. at ¶¶ 43,

13

44. The continued support from Mr. Pruitt's family and friends is particularly notable given his lack of criminal history and the nature of the offense charged. The people that know him best – and who are in a position to be most affected by his conduct – are the very ones that continue to believe in him and to vouch for him. Because of this continued family support, Mr. Pruitt is more likely to successfully reintegrate following completion of any sentence of imprisonment.

    C.    A Sentence at the Mandatory Minimum Is a Reasonable Sentence

Given Mr. Pruitt's past history and characteristics and the nature of his offense, he is unlikely to be a recidivist. *See* 18 U.S.C. § 3553(a)(2)(B)-(C) (requiring Court to consider need of sentence to afford adequate deterrence and to protect public from further crimes of defendant). He clearly does not have a proclivity for generalized criminal behavior, but at some point became enmeshed in a lifestyle that has led him badly astray. Mr. Pruitt is an excellent candidate for rehabilitation, and is intent on remaking his life upon release; he looks now to a time when he can resume a law-abiding and productive life.

Finally, it cannot be overstated that a sentence of ten years is itself an extremely severe sentence, particularly when imposed on someone who has never previously offended and who has never previously had any significant restriction on his liberty. But for the mandatory minimum required by statute, counsel would

advocate for a lower sentence. His life is changed forever. He will be separated from his family during an important period in his life and a trying time for them, and even when released, he will continue to suffer the opprobrium of the community.

CONCLUSION

For the foregoing reasons, Mr. Pruitt through counsel, respectfully requests that the Court, after consideration of the factors of Section 3553(a) of Title 18, United States Code, enter a sentence of 120 months in this case.

Respectfully submitted, this 3rd day of August, 2010.

s/ *Richard B. Holcomb*
RICHARD B. HOLCOMB
GEORGIA STATE BAR NO. 360333
ATTORNEY FOR MR. LAWRENCE PRUITT

Federal Defender Program, Inc.
Suite 1500, The Centennial Tower
101 Marietta Street N.W.
Atlanta, Georgia 30303
Telephone: 404-688-7530
Facsimile: 404-688-0768
richard_holcomb@fd.org

CERTIFICATE OF SERVICE

I hereby certify that the foregoing SENTENCING MEMORANDUM was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following Assistant United States Attorneys of record:

>Richard Moultrie
>Nekia Hackworth
>Assistant United States Attorney
>600 Richard B. Russell Building
>75 Spring Street, S.W.
>Atlanta, Georgia 30303

Dated: This 3rd day of August, 2010.

>s/ *Richard B. Holcomb*
>RICHARD B. HOLCOMB
>GEORGIA STATE BAR NO. 360333
>ATTORNEY FOR MR. LAWRENCE PRUITT

Federal Defender Program, Inc.
Suite 1500, The Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia 30303
Telephone: 404-688-7530
Facsimile: 404-688-0768
richard_holcomb@fd.org