```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION



UNITED STATES OF AMERICA,         )
                                  )
vs.                               ) Case Number 1:09-CR-181(2)
                                  )
MARVIS NICHOLE HARRIS,            )
                                  )
          Defendant.              )
```

### SENTENCING HEARING

Thursday, August 5, 2010


BEFORE THE HON. CHARLES A. PANNELL, JR.



APPEARANCES:


FOR THE GOVERNMENT:     Ms. Nekia Shantel Hackworth


FOR THE DEFENDANT:      Mr. L. Burton Finlayson


```
                    Reported by:
                 Martha J. Frutchey
                U.S. District Reporter
         Room 2314, United States Courthouse
               75 Spring Street, SW
             Atlanta, Georgia  30303
                  (404) 215-1573
```

**Thursday, August 5, 2010**

1

2      THE COURT:  I will sound case 09-CR-181, United States

3  of America versus Marvis Nicole Harris set down today for

4  sentencing.  Is the government ready?

5      MS. HACKWORTH:  Good afternoon.  Yes, Your Honor, the

6  government is ready to proceed.

7      THE COURT:  Defense ready?

8      MR. FINLAYSON:  Good afternoon.  Lee Finlayson for Ms.

9  Marvis Harris.  We are ready.

10      THE COURT:  The Court has the presentence report and

11  would like to adopt the facts set forth in the presentence

12  report and make those the findings of the Court.  Is there any

13  problem with that on behalf of the government?

14      MS. HACKWORTH:  No, Your Honor.  And, Your Honor, we

15  failed to introduce ourselves.  Nekia Hackworth on behalf of the

16  government and accompanied by my co-counsel, Richard Moultrie,

17  and, no, we don't have any problems with the adoption of the

18  actual finding.

19      THE COURT:  On behalf of the defendant?

20      MR. FINLAYSON:  No, Your Honor.

21      THE COURT:  Let me take up the objections.  I believe

22  the defendant has the only objections and the first one is

23  regarding paragraph 19.  Tell me about your objection, please,

24  sir.

25      MR. FINLAYSON:  Your Honor, there is sort of a slough or

1   litany of objections relating to which set of guidelines apply

2   here.  The probation officer has calculated my client's

3   Sentencing Guidelines as if this were a child pornography case.

4   This is not a child pornography case, Your Honor.  It was a

5   trafficking or a prostitution case of a young woman who was 17

6   years old.  We do not dispute that a photograph of MC was posted

7   on the internet, and that is the basis for the argument put

8   forth by the probation officer and also adopted by the

9   government.

10          It is their position that because this case involves the

11   posting of an advertisement with a 17-year-old girl on the

12   internet, that the child pornography guidelines should apply,

13   rather than the interstate transport or prostitution guidelines

14   of transporting a minor.

15          Your Honor, their argument fails for several reasons,

16   which I have gone through in pretty thorough detail in my

17   sentencing memorandum.  The guidelines that we are talking about

18   are 2G1.3, which provides an enhancement for the use of a

19   computer, which may or may not be rational, but it is in there.

20   If that guideline has a reason to exist, this is the type of

21   case.

22          In other words, there is no reason for the Commission to

23   write 2G1.3 the way they did if every interstate prostitution

24   case that involved a computer for advertising is going to be

25   treated as a child porn case.  Your Honor, the difference we are

1    talking about here is a guideline range of 188 to 123 versus 63

2    to 78.  So it's a huge swing.

3         Your Honor, I have for the Court four cases, which I'd

4    like to hand up.  I have given copies to counsel for the

5    government; four cases in which the charges were the same

6    charges as here in this case.  They were interstate prostitution

7    cases involving a minor, and the defendant listed the child or

8    children, they listed those victims on Craigs List.  So I

9    think -- I know of no precedent where we should do what they are

10   suggesting, and I can hand the Court four cases where the

11   sentencing courts there sentenced the defendant under the

12   guidelines for the child prostitution or a minor prostitution,

13   not the child pornography.

14        THE COURT:  Tell me again what your cases stand for.

15        MR. FINLAYSON:  They stand -- They are all cases where

16   the District Court imposed a sentence under 2G1.3 as opposed to

17   the suggested 2G1.1.  In other words, in all these cases it was

18   a prostitution operation.  The pimp advertised the children or

19   the minors, advertised them on Craigs List, and the sentencing

20   courts did not then go and sentence them as it were a child

21   pornography case.

22        And, Your Honor, those cases are, just for the record,

23   the first one is United States versus Burnett.  It's a Third

24   Circuit case, 2010, April the 16th, U.S. Appeals, Lexus number

25   8765.  Then I have a Sixth Circuit case, Your Honor, 2010, U.S.

1   Appeals, Lexus 13081, which is <u>U.S. v. Murphy</u>.  And then I have

2   <u>United States versus Brooks</u>, which is in the Ninth Circuit,

3   2010, U.S. Appeals, Lexus 13931.  And lastly, an Eleventh

4   Circuit case, <u>United States versus Matkins</u>, July 30th, 2010,

5   Eleventh Circuit, U.S. Appeals, Lexus 15882.  And all of these

6   cases involved prostitution charges.  A computer was used to

7   advertise the prostitutes on Craigs List, as here, and all of

8   those cases were sentenced under 2G1.3, not the suggested 2G2.1,

9   which would be the child pornography guidelines.  I'll be glad

10  to approach and hand those up, if I may.

11          THE COURT:  Wait a minute.  I'm trying to get in my

12  mind.  My mind has gone blank about what Craigs List is.  I

13  thought that was a place for helping find victims.

14          MR. FINLAYSON:  It can be a list for finding anything.

15  You can buy a house, a car, a boat, or an evening of

16  entertainment.

17          THE COURT:  I'm thinking of something else.

18          MR. FINLAYSON:  Also, in our case, Your Honor, we also

19  had an advertisement in "Creative Loafing", which is also a

20  local newspaper.

21          THE COURT:  Okay.  Well, let's see, what's the

22  government's response?

23          MS. HACKWORTH:  Your Honor, would the Court be

24  comfortable if I approach the podium?

25          THE COURT:  Wherever you are comfortable.  You can

1    remain seated, just so long as you are at one of the

2    microphones.  You have got two to choose from.  Three.  Well,

3    there are four really you can choose from.

4         MS. HACKWORTH:  Your Honor, at this time I'll just limit

5    my argument to the application of the 2G2.1 cross reference.  Of

6    course, if the Court would like for the government to address

7    additional objections raised by the defense, we'd be happy to do

8    so, but for now we'll just stick to the first objection.

9         THE COURT:  That's the way I do it.  I take them one at

10   a time.

11        MS. HACKWORTH:  Certainly.  Your Honor, we believe that

12   in this case that the cross reference should apply.  And we

13   believe that the strongest argument in favor of application of

14   the cross reference is actually the text of the cross reference,

15   itself.  As the Court, I'm sure, is aware, the original

16   applicable guideline in this case is the sex trafficking offense

17   guideline, which occurs at 2G1.3.  If you look at 2G1.3C, as in

18   cat, 1, that is where the cross reference is set forth.  The

19   language of that cross reference essentially states that if the

20   offense involved a minor engaging in sexually-explicit conduct

21   for the purpose of producing a visual depiction of that conduct,

22   then the Court and probation should go to the sexual

23   exploitation of a minor by producing sexually-explicit material

24   guideline, as set forth in 2G2.1.

25        Your Honor, in this case, and we'll provide a little

1    background so that the Court understands why we vigorously

2    believe this application should apply.  Ms. Harris and her

3    co-conspirators had the minor victim in this case, MC, when they

4    first encountered her in the hotel room where the substance and

5    the majority of the scheme began, they had her take off her

6    clothes and take pictures where she was engaging in a lascivious

7    exhibition of her pubic area.  The government exercised its best

8    efforts to describe at least the one image that we believe

9    squarely fits in the definition of having a minor engaged in

10   sexually-explicit conduct; however, we do also have a redacted

11   version of the posting that included that photograph here today

12   and we would like to tender that to the Court if the Court would

13   be willing to entertain that.

14         THE COURT:  All right.

15         MS. HACKWORTH:  We'll show that to defense counsel so

16   they are aware.  Your Honor, this is a web site called

17   backpage.com.  I think our understanding is that it is either

18   affiliated with "Creative Loafing" or it may be its own separate

19   web site, but in any event it is similar in that it has other

20   legitimate uses, news, the regular exchange of items, but

21   apparently this web site has an adult services section.  This is

22   the advertisement that pretty much led to this case.

23         When the FBI was doing its task force sting operation,

24   this was the very advertisement that the investigator who

25   ultimately arrested Ms. Harris, her co-defendant, Mr. Pruitt,

1    and initially MC, this is the advertisement that they came

2    across.  Your Honor will see that the second picture down on

3    this particular advertisement shows the minor.  This person

4    depicted in this advertisement is the minor victim in this case,

5    who I'll refer to as MC.  It shows her with her face visible,

6    and we have redacted that for the purposes of the minor's

7    privacy.  She is holding her breasts and she is squatting so

8    that her pubic area can be displayed.

9        We believe as we set forth in our sentencing memorandum

10   that the pose that gave rise to this picture qualifies as a

11   minor engaging in sexually-explicit conduct.

12       Now, the second prong of this cross reference is that

13   the minor engaged in that conduct, but the second prong, Your

14   Honor, is that the person engaged in that conduct for the

15   purpose of creating a visual depiction of it.

16       Your Honor, here we believe that, again, this squarely

17   fits in that definition.  Ms. Harris, in the presence of Carlos,

18   who at that time that was the name that we knew the third

19   co-conspirator by, and Mr. Pruitt had MC engage in this act so

20   that they could take a picture of it, and other pictures, as the

21   Court will see in this advertisement.  Those photographs were

22   then uploaded to various internet web sites so that these

23   advertisements could be created.

24       Now, we think that those facts are distinguishable at

25   least from the Murphy case and the Burnett case that the defense

1    counsel has submitted to the Court.  We had an opportunity to

2    look at those two.

3           In those two particular cases, Your Honor, there appears

4    to be -- now it is possible there were images that were as

5    sexually explicit as these, but there is no indication of that

6    here on the face of these court opinions.  At least in the

7    Burnett case, it appears as though there were some photographs

8    used, but there is no indication that they involve a minor

9    engaging in sexually-explicit conduct.  And in the Murphy case,

10   there are also photographs mentioned, but, again, it doesn't

11   really -- the case doesn't really describe the images that were

12   used as part of those photographs.

13          But here, Your Honor, you have the pictures in front of

14   you so you can see what MC was asked to do, what she did, and

15   how, in fact, it was used.

16          Taking these photographs, Your Honor, were a necessary

17   part of this conspiracy.  This was the type of pimping that was

18   going to be done, unlike sort of the old school pimping, this is

19   sort of a new age digital pimping.  And in this particular

20   situation this is how these defendants opted to advertise MC, to

21   have her pose suggestively, take a photo of it, upload it, and

22   see how many and if any commercial sex customers would come and

23   engage with MC in these commercial sex services.

24          Your Honor, the standard here is a preponderance.  The

25   government has to show this cross reference applies by a

1    preponderance of the evidence, and we believe that at a minimum,

2    the advertisement, the plain language of the guideline cross

3    reference, itself, and also, Your Honor, the application note,

4    which counsels that this cross reference should be construed

5    liberally, broadly, we believe that all of that together, Your

6    Honor, weighs in favor of finding that the cross reference

7    applies in this case.

8         THE COURT:  All right.  Do you want to be heard any

9    further?

10        MR. FINLAYSON:  Yes, Your Honor.  Thank you.  Your

11   Honor, I think if we stretch this guideline, and a stretch is

12   what it would be, if we stretch this guideline to make it fit,

13   we are creating an unjust result on a tangent.  Because then

14   what do we do with the real child pornographers or the real

15   people that mass produce pornography for pornography sake?

16        Until I read the government's memo, it never would have

17   crossed my mind that these advertisements displayed

18   sexually-explicit conduct.  I don't think of a photograph such

19   as this as conduct.  Now, I suppose I understand the argument in

20   retrospect, but I don't accept it or buy it.  I don't think

21   that's what the guideline is intended to do.

22        This guideline was intended to prosecute and enhance

23   penalties for people that make child pornography.  And that was,

24   you know, that was not the purpose of this activity.  You know,

25   the cross reference says if there is a computer used for the

1    purpose of producing visual depictions of such conduct, the

2    purpose here was to advertise the prostitution services, and we

3    are talking about a very limited number of images here.

4          And if we are going to treat this type of case at the

5    extreme level they want it to be treated, then what do we do to

6    the mass producers?  There is nowhere to go.  That guideline, I

7    think, it shouldn't be used in any possible hypothetical

8    situation, and I think this is just too much of a stretch.

9          Again, the image was not created for the purpose of

10   creating pornography or the purpose of pandering to pedophiles.

11   Furthermore, a lot of the cases involve the use of a computer

12   where they reach out and they show such images to minors.  And

13   this was not the case.  This was not the use of a computer to

14   reach out to MC and somehow reel her in by the use of the

15   computer.  The use of the computer here, the target audience

16   were those people that were going to purchase the services of a

17   19-year-old prostitute.  That's how she was advertised.

18         You know, it wasn't like they were trying to sell this

19   as a young child, a 12-year-old victim.  This was somebody they

20   were trying to pass off as an adult.

21         Now, admittedly, it is all wrong, it is all illegal, and

22   it is all horrible, but I just don't think the guidelines should

23   be stretched and applied in this fashion, and I submit that the

24   purpose of the creation of the images was not for depicting the

25   conduct.  If it shows photographs of her actually having sex,

1   that might be one thing, if it was a movie of her doing things,

2   that might be another, but until the government made the

3   argument that photograph depicted conduct, it never would have

4   crossed my mind, and I think -- I suppose you can see anything

5   if you look hard enough, and I don't see it here.

6            THE COURT:  All right.  I'll overrule the objection.

7   Let's go on to your objection paragraph 20.

8            MR. FINLAYSON:  Your Honor, I think the next set, those

9   next objections all relate to whether or not we are going to be

10  under --

11           THE COURT:  They are interrelated, aren't they?

12           MR. FINLAYSON:  Yes, sir.  I would object.  Again, I

13  don't think we should be in 2G2.1 at all.  I think we should be

14  in 2G1.3.  There is no doubt, we don't dispute she was 17 years

15  old.  She was a minor.  I just dispute that we should be in that

16  section, so I don't think I need to beat that horse any further.

17           THE COURT:  Okay.

18           MR. FINLAYSON:  Your Honor.

19           THE COURT:  Well, let's see, for the record, I'll

20  overrule your objection to paragraph 20.  Now, let's see, 21.

21  Well, all of this goes together through this presentence.  It's

22  been a few days, and I would overrule objection 21.

23           MR. FINLAYSON:  Your Honor, the only thing I would add

24  to 21 is the fact that we are enhancing the guidelines for the

25  use of the computer.  Again, this is in the discussion somewhat,

1  but I would point out that the computer was not used here to

2  reel in or target a minor.  The computer here was used to reel

3  in and target the audience, and I think -- In other words, the

4  use of the computer was not exploiting the minor.  If anything,

5  under their argument the use of the camera, the taking of the

6  photograph was the theoretical conduct that exploited the minor,

7  and here I would submit that -- I would add the argument that

8  paragraph 21, the use of the computer, did not exploit the minor

9  and should also for that reason not apply.

10        THE COURT:  All right.  I'll overrule that objection.

11  Now, let's see, your next objection is at paragraph 22.

12        MR. FINLAYSON:  That's correct, Your Honor.

13        THE COURT:  Well, why doesn't that apply?

14        MR. FINLAYSON:  I think for the same reason, Your Honor.

15  I think it -- I think -- I would just stand on my previous

16  objection and adopt the previous argument.

17        THE COURT:  All right.  I'll overrule for the record

18  that objection.  Now, let's see where we are.

19        MS. HACKWORTH:  Your Honor, if I may interject.  With

20  respect to the last objection at paragraph 22 that relates to

21  2G2.1B6, we just wanted to advise the Court of some case law

22  that we became aware of that may affect the Court's decision in

23  that regard.

24        THE COURT:  You think the Court is incorrect and the

25  objection ought to be sustained?

1        MS. HACKWORTH:  It is possible, Your Honor, and the

2    government actually did not object.  I'm not going to say you

3    are wrong, Your Honor.  That would not be good necessarily, but

4    we just wanted to provide the Court with some additional

5    information.

6        The government originally did not file any response or

7    at all quibble with probation regarding the application of that

8    offense guideline.  However, in preparing for today's sentencing

9    we took a closer look at the application note that relates to

10   the computer use enhancement, and the text of that application

11   note seems to suggest that that application or that enhancement

12   is really intended for situations where a defendant uses the

13   computer to communicate with a minor or with someone who is in

14   the custody, care, and control of a minor.

15       We tried to find some case law that would hopefully

16   square the application note with the text of the enhancement.

17   We did find that the Eleventh Circuit as recently as July 30th,

18   the Eleventh Circuit was faced with a case where a defendant did

19   use a computer in a prostitution type case and objected to the

20   application of that enhancement, because similar to Ms. Harris

21   and Mr. Pruitt, he was on one end with the minor and was

22   communicating with others out there in cyberspace.

23       The Eleventh Circuit essentially punted on the issue.

24   They said that arguably a District Court that did apply the

25   enhancement would be an error, but because they were in a plain

1    error posture, they basically demurred on that and decided to

2    affirm the defendant's conviction on another ground.  And there

3    is different case law out there in other circuits about this

4    issue.

5              So we just wanted to at least make the Court aware of

6    that body of law, and it may not change the Court's decision,

7    but we did want to put the Court on notice of that, and we have

8    those cases if the Court would like to have them for review

9    either now or later.

10             THE COURT:  I appreciate your argument.  All right.

11   I'll give the defendant the benefit of the doubt on that issue

12   and remove those two points.  I believe that's all the

13   objections.  Anything else before I make a guideline

14   calculation?

15             MR. FINLAYSON:  Your Honor, there is one more.

16             THE COURT:  All right.

17             MR. FINLAYSON:  The vulnerable victim objection, Your

18   Honor.

19             THE COURT:  Which paragraph are we on now?

20             MR. FINLAYSON:  Well, maybe he took it out.  Did you

21   take that out?  I take it back, Your Honor.  He withdrew the

22   vulnerable victim enhancement, so that is off the table.

23             THE COURT:  All right.  Well, the statutory penalty, the

24   highest the Court can impose would be 5 years, $250,000 fine or

25   both.  No mandatory minimum.  Total offense level of 33.

1    Criminal history category Roman numeral 2.  That yields, I

2    believe, 135 to 168 months.  Fine guideline range of 17,500 to

3    175,000.

4            MS. HACKWORTH:  Your Honor.

5            THE COURT:  Yes.

6            MS. HACKWORTH:  My apologies for interjecting again, but

7    we thought we heard the Court say that the total offense level

8    would be 33.  And if that's the case, criminal history category

9    2 then would be applicable, well, at least the calculated

10   guideline range is 151 to 188.

11           THE COURT:  Okay.  Well, now, wait a minute, let me make

12   sure.  The total offense level is 33.  Criminal history category

13   2.  I don't know why we have to go through all of this on a

14   binding plea agreement, but anyway, 151 to 188 months.  Fine

15   guideline range, 17,500 to 175,000.  No restitution.  Special

16   assessment of $100.  There is a forfeiture in this case?

17           PROBATION OFFICER:  Yes.

18           MS. HACKWORTH:  One moment, Your Honor.  Your Honor, Ms.

19   Harris -- This case was eligible for forfeiture, however,

20   because of the type of case and the FBI's policies about

21   forfeiting computers in certain cases, we would not be pursuing

22   forfeiture.  So as a part of sentencing there will be no

23   forfeiture provisions.

24           THE COURT:  All right.  No probation option.  Supervised

25   release of 2 to 3 years.  It is noted that the defendant is a

1    United States citizen.  If there no further objections, the

2    Court will adopt those final guideline calculations.

3         At this point I'll give the defendant an opportunity to

4    be heard, and the defendant has the right to address the Court

5    personally.  If she wishes to do so, she may.

6         MR. FINLAYSON:  Thank you, Judge.  Your Honor, just so

7    the Court knows too, we have a witness that will want to address

8    the Court, a family member.  Your Honor, and also, I guess, the

9    Court should take into consideration and the government will be

10   heard, I presume, on their motion for reduction of sentence

11   pursuant to 5K1.1.  My client did provide substantial assistance

12   to the government.

13        THE COURT:  My note is you all have a plea agreement for

14   60 months, is that right?

15        MR. FINLAYSON:  It's not a binding plea.  No, Your

16   Honor, that's just the statutory max.  There is no agreed-upon

17   final sentence.  I wouldn't belabor it quite so much.  If I was

18   already where I wanted to go, Your Honor, I would sit down and

19   shut up.

20        THE COURT:  Okay.

21        MR. FINLAYSON:  But with all due respect, first things

22   first.  The government is going to file or has filed the 5K1.1

23   motion.  They are asking for a reduction.

24        THE COURT:  Well, I don't think I have that.  Do I have

25   that motion?

1      MS. HACKWORTH:  Your Honor, we filed -- I'm sorry.  My
2   apologies.  We want to state, Your Honor, that we filed it under
3   seal on Monday of this week, but we'll look through our pile to
4   see if we have an extra copy.
5      THE COURT:  Okay.  Yeah, here is my note.  Okay.  That's
6   a 48 -- to go to 48 months, right?
7      MR. FINLAYSON:  That's their request, Your Honor.
8      THE COURT:  Okay.
9      MR. FINLAYSON:  And I am asking ultimately for a much
10  lesser sentence than that.
11     THE COURT:  Proceed.  Okay.
12     MR. FINLAYSON:  Thank you.  Your Honor, very briefly,
13  one of the areas I request -- I am requesting a lesser sentence
14  is in the criminal history department.  I have asked for a
15  lateral departure into category 1.  I submit that the criminal
16  history overrepresents my client's true culpability.  She has
17  got one conviction for a misdemeanor marijuana and one
18  conviction for a possession of cocaine.
19     Now, Your Honor, in a vacuum, that might seem like, oh,
20  what's fair is fair, but this is not a vacuum, Your Honor.
21  Marvis Harris, as the Court is well-aware, has worked in the sex
22  industry for ten years.  From about the time she was 16 going on
23  17 until the time she is 26 and arrested in this case, she has
24  been either a stripper or prostitute or both.  Her life story,
25  Your Honor, is one of the saddest ones I have ever written

1    about.  Her parents divorced when she was 3.  Her father

2    molested her when she was 8.  Her 25-year-old boyfriend beat her

3    when she was 15 and then left her.  She was in Georgia Regional

4    when she was 16 for a suicide attempt.  She was diagnosed with a

5    depressive disorder.  She is 17.  She is working the streets.

6    Seventeen and a half, a fine man named Reb pimps her out at Club

7    Nikki and gets her a permit so she can dance there and he can

8    take her money.  She works for the next ten years from there,

9    nine years from the age of 17, she works in that industry.

10        So my client is charged with a very serious and horrible

11   crime, but the crime that was committed in this case, with all

12   respect to MC, it pales in magnitude to the things that happened

13   to Ms. Harris throughout her life.  The fact that I am in here

14   arguing about child pornography guidelines and 151 and 188

15   months, I have got to say, baffles me.

16        With all due respect, if she had killed three people, I

17   would feel that given her life history, assuming it was in the

18   context of prostitution and stripping, I would think there would

19   be some explanation and some justifiability here.

20        I have cited some articles and some studies in my memo,

21   and the fact is it's a horrible cycle that my client went

22   through.  Her momma was a dancer at the Gold Club.  It's like a

23   bad country song.  That's who raised or didn't raise my client.

24   Her momma was strung out on drugs.  My client ended up raising

25   herself.  I have got an aunt that is going to testify here and

1   she will tell the Court when my client was 6, my client was with

2   her until 6, but when my client was 6 her mother came and got

3   her back, and that was the beginning of the end.

4         I know the FBI is trying to stop this cycle.  I know the

5   government is trying to do the right thing and put an end to

6   these pimps and they are trying to shut down Craigs List and

7   this type of thing.  Every case it's amazing, you start looking

8   at the case law in this department, and Craigs List comes up in

9   almost every one of them.  So I understand what they are doing

10   and why they are doing it.  But with all due respect, this is

11   overkill for Marvis Harris.

12         This young woman is a victim of the very cycle they are

13   trying to stop.  And the studies I have cited, Your Honor, point

14   out that drug usage goes hand in hand with this kind of stuff,

15   and it is a way of coping.  It is a way of dealing with the

16   daily pain of having sex with ten and twenty strangers in every

17   possible way, and form, and orifice that you can imagine.

18         You know, the stress level of any job would drive

19   anybody to anything, but the stress level -- I can think of no

20   greater stress and no worse job than anybody could be subjected

21   to.

22         So the fact that my client has one possession of

23   marijuana charge and one cocaine charge, with all due respect,

24   I'm surprised there are not a million.  I'm not surprised there

25   are not ten.  And so I think the Court would be authorized to

1    say, you know what, given what she's been through, the fact

2    she's in category 2, the least we could do is maybe look at her

3    as a category 1, and I'd ask the Court to take that into

4    consideration.

5            Your Honor, I'm also asking for a lesser sentence or a

6    variance based on this computer enhancement.  The Court is

7    well-aware we have been arguing about this computer thing

8    already, and that little computer hook has driven my client from

9    guidelines of 63 months up to 151 months.  I know we have a 60

10   month statutory cap and I know I should be thankful and happy

11   that I'm not up there.  But the truth is if I were judge, if I

12   were king, and I would look at a case, I want the Court to look

13   at this case from 60 months coming down, not 160 months coming

14   down.

15           I know we are getting a 5K motion.  We appreciate that,

16   and Ms. Harris earned that, but this is not 160-month person,

17   and her conduct in this case, it's a three-day period of time we

18   are talking about with this MC.  This conduct over these three

19   days does not warrant her starting out up at 161 months.

20           And I think this computer enhancement, Your Honor, I

21   have cited the Second Circuit, the Dorvee case, that computer

22   enhancement, they point out in Dorvee, 97 percent of all porn

23   cases get that enhancement.  It's like why don't we give them

24   more time for having a cell phone?

25           The reality is everybody in our country is getting more

1    and more wired to the internet on a daily basis.  Eventually we

2    are all going to all walk around with little screens attached to

3    our glasses, and we're all going to be on the internet 24 hours

4    a day.  We won't even talk to each other.  We'll just text

5    message and eventually just be able to think the messages, I

6    assume, through the internet.

7          But the fact of it is, this computer has leveraged this

8    case to an astronomical place, and I think the Court can look at

9    that and say I don't think that is right in this context.  I

10   don't agree with it and I'm going to give her less time.  And

11   that's what I'm asking the Court to do is undue the insanity we

12   just did with these guidelines.  I know we are starting at 60

13   months.  I'm asking the Court for 12 months and a day.  And the

14   truth is I'm going to ask the Court to put my client in a

15   halfway house, because she has a 6-year-old daughter, Judge,

16   that's with the aunt, the same aunt that raised her.  We have

17   got to break the cycle one way or the other.  And the aunt is

18   going to come tell you that when Ms. Harris came to her, when

19   Ms. Harris started in this thing, she was on drugs, she was

20   unbearable, she wasn't responsible.  But when she got arrested

21   in this case and she started going to therapy every week -- and

22   I'm going to put those notes into evidence, Your Honor, she went

23   to counseling once a week at the direction of pretrial services,

24   and she has done very well.  She has turned herself quite

25   around.  If I could have an evidence sticker, I'd like to put

1    these in.  Your Honor, I'd like to move into evidence

2    defendant's 1, which is records of my client's meetings with her

3    counselor at Atlanta Psychological Associates.

4            THE COURT:  They are admitted.

5            MR. FINLAYSON:  Thank you, Judge.  Your Honor, if we

6    could look at those records, you will see that my client met

7    with the counselor, Mr. Palmer, four times a month.  And we have

8    got notes of the weekly meetings, and then we have got sort of a

9    monthly summary.  And there is just a few things I want to point

10   out to the Court.

11           The early ones, she is doing okay.  I'll take the Court

12   to July 31st, 2009.  We are talking a year ago when this was --

13   a year ago from now is when my client was going first with that

14   counselor.  July 31st.  Client has moved along with her mother

15   to another house.  Client has been having transportation

16   problems and difficulty getting to her NA meetings.  Client

17   seems very open and talkative in our sessions.  Client wants to

18   get a job but is having lots of difficulty.  Client reports

19   she's been thinking about going back to dancing.  Going back to

20   dancing.  We discussed the lifestyle and how problematic that

21   could be for her as well.

22           The next month, August 31st, '09.  Client started

23   working a job that she reports she doesn't like due to the

24   environment.  She missed an NA meeting on 8/23.  She appears to

25   be open and very talkative in our individual sessions.  Client

1    is bored at home, wants to continue a job search so she can get

2    a better job.  Client is adjusting to making as she calls it

3    slow money compared to prostituting.  Client watches lots of

4    movies and is anxious to go to court at this time.  Client plans

5    to get an abortion on 9/4/2009 at the Feminist Women's Clinic.

6    Client's driver's license suspended again.  That's a year ago.

7    That's August 31st, 2009.

8              Your Honor, we jump ahead.  Let's go to November 30th,

9    2009.  Client continues to do well.  Has been going to NA

10   meetings and working.  Client appears very open-minded.  Wants

11   to change her way of life.  Client is upset with her boyfriend.

12   He lives with her and does not have a job.  Client very

13   talkative in our sessions.  Client denies having any problems

14   outside of wanting to get her own apartment.

15             December 31, '09.  Client reports being very emotional

16   and thinking about her upcoming sentencing in February, living

17   with her mother and having a boyfriend with no potential.

18   Client has been displaying a lot of positive maternal instincts

19   regarding her six-year-old daughter.  Client was upset.  She was

20   unable to spend Christmas Eve night with her daughter as she has

21   done in the past.  Client's behaviors and thinking has been

22   changed drastically and becoming more radical -- I'm sorry, more

23   rational.  Client working on acceptance and patience.  Client

24   continues going to NA meetings.

25             February 28th, 2010.  Client continues to do well and is

1    anxious about starting and completing a prison sentence.  Client

2    plans to testify in co-defendant's trial next month.  Client is

3    spending more quality time with her daughter.  Client missed

4    several NA 12-step meetings.  Client has met a new friend via

5    her brother that comes to visit at her home.

6        March.  Client continues to do well, has a very positive

7    attitude.  However, she's been feeling and expressing tension

8    and ready to begin her sentence.  Client talks freely and open

9    in our individual sessions.  Client reports she got into an

10   altercation with brother's girlfriend, who is smoking marijuana

11   and using cocaine.  They fought.  Client called the police and

12   made a report.  She feels she is not wanted by her mother

13   anymore.  Wants to serve prison sentence and move.  Recommended

14   that she move in with her daughter's guardian.

15       And the last one I'll read to you, Your Honor, April

16   30th, 2010.  Client celebrated her first anniversary of recovery

17   at Glen Castle this past Sunday, 4/25/2010.  Client has been

18   progressing very well and continues to work and follow the

19   rules.  Client still does not like her living situation, however

20   she is making adjustments and her acceptance level is high.

21   Client has also purchased NA materials and is reading and

22   learning about spirituality.  Client is still ready to start her

23   sentence in order to go on with her life.  Client has bonded

24   very well with her daughter.  Client's mother has moved a new

25   man into the house.

1         Your Honor, I'm asking the Court for a sentence that is

2    lesser than the advisory guideline range.  The real range is 60

3    months.  That is the max, the statutory max, and that is the

4    real starting place.  I just ask the Court to view that in and

5    of itself and not consider what I call an absurdity of 151

6    months.

7         Your Honor, my client's aunt is going to come speak very

8    briefly about some of my client's history and mother and that

9    sort of thing.  Ms. Rowling, could you come up?  Tell the Court

10   who you are.

11        MS. ROWLING:  My name is Kimberly Rowling and I'm

12   Marvis's cousin.

13        MR. FINLAYSON:  How long have you known Marvis?

14        MS. ROWLING:  All her life.

15        MR. FINLAYSON:  Did you help raise her?

16        MS. ROWLING:  She was with me from the time she was two

17   until she was six.

18        MR. FINLAYSON:  Why was she with you?

19        MS. ROWLING:  Because her momma was dancing,

20   prostituting, drugs, and didn't have time to raise her.

21        MR. FINLAYSON:  What happened when she was six?

22        MS. ROWLING:  She came and got her from me when she was

23   six.  From there it went downhill.  When she turned 16, she

24   started to dance, and drugs, and prostitution.

25        MR. FINLAYSON:  Does she have a daughter?

1          MS. ROWLING:  Yes.  She has a daughter, Alexis, that has

2     been in my care since she was a month old.

3          MR. FINLAYSON:  What's the relationship between Marvis

4     and Alexis now?

5          MS. ROWLING:  It is great.  I trust her with her.  I let

6     her get her on the weekends and spend time with her whenever she

7     wants to.

8          MR. FINLAYSON:  Was it always that way?

9          MS. ROWLING:  Oh, no.

10         MR. FINLAYSON:  What was it like before the last year,

11    how was it?

12         MS. ROWLING:  She could only see Alexis at my house

13    before this past year.  She couldn't take her away.  She could

14    only visit her in my presence.

15         MR. FINLAYSON:  That was your decision?

16         MS. ROWLING:  Yes.

17         MR. FINLAYSON:  Why was that?

18         MS. ROWLING:  I didn't trust her.

19         MR. FINLAYSON:  Why is that?

20         MS. ROWLING:  Because of her lifestyle.

21         MR. FINLAYSON:  What was that like?

22         MS. ROWLING:  Drugs, prostitution, different men.

23         MR. FINLAYSON:  How is she doing now?

24         MS. ROWLING:  She is great.

25         MR. FINLAYSON:  In what way?

1       MS. ROWLING:  She spends time with Alexis, like I said.
2  She comes and gets her on the weekend.  I let her keep her.
3  Alexis looks forward to spending time with her, asks about her
4  all the time.
5       MR. FINLAYSON:  Is she staying off the drugs?
6       MS. ROWLING:  Yes.
7       MR. FINLAYSON:  Been working?
8       MS. ROWLING:  Yes.
9       MR. FINLAYSON:  Anything else you want to tell the
10  judge?
11      MS. ROWLING:  That if she's gone for a long period of
12  time, it's going to affect Alexis a lot because she's used to
13  spending time with her and seeing her and she knows that is her
14  mother.
15      MR. FINLAYSON:  Okay.  Thank you.
16      MS. ROWLING:  Thank you.
17      THE COURT:  Thank you.
18      MR. FINLAYSON:  Your Honor, I don't want to beat a dead
19  horse.  This is not a normal case.  My client is a defendant
20  here, but she is also a victim of the exact cycle, the exact
21  system we are trying to break.  Craigs List is making a whole
22  bunch of money out here.  Pimps are making a whole lot of money.
23  My client has nothing to show but a body and soul that have been
24  worn out and worn down from ten years of abuse.  And I think to
25  slap a 48-month prison sentence on her on top of all she's been

1  through, I just think -- I don't think it is warranted in this

2  case.

3        And, you know, I know what happened with MC was wrong,

4  and she recognizes that, and she will tell the Court that, but

5  it was a three-day thing, and my client was subjected to worse

6  for the last ten years.  And with that, Your Honor, she'd like

7  to come up and speak to the Court.

8        THE DEFENDANT:  I just want to say that I'm sorry for

9  being involved in this situation and I hope no other young girls

10  have to go through what I have been through, and I'm sorry.

11       MR. FINLAYSON:  Okay.  Thank you.

12       THE COURT:  All right.  Well, thank you, Mr. Finlayson.

13  You have done a very good job with your case.  Any response on

14  behalf of the government?

15       MS. HACKWORTH:  Yes, Your Honor.  Your Honor, we are not

16  here to minimize Ms. Harris's history, what she's been through

17  and the rehabilitative steps she's taken since this case was

18  first brought to this court.  But what we are here to do is

19  vindicate MC, the 17-year-old girl who was prostituted over a

20  two-day period with at least sixteen different men.  That is why

21  we are here today, Your Honor, at least that's why the

22  government is here today.  And in order to vindicate what

23  happened to MC, we believe that a reasonable sentence under the

24  factors set forth in 3553(A) would be a sentence of 48 months.

25       As Mr. Finlayson indicated, the statutory maximum

1    becomes the guidelines range in this case, 60 months.  Being

2    well-aware of Ms. Harris's cooperation with the government, we

3    ask that the Court depart downward from that guideline range by

4    12 months.  Ms. Harris, after various motions filed and denied

5    readily came in and assisted the government in the prosecution

6    of her co-defendant, and the investigation of a third

7    co-conspirator.  We believe that a 12-month reduction is what

8    that particular cooperation merits.

9          But we also recommended that sentence, Your Honor,

10   because under the factors set forth in 3553(A), it's the

11   necessary sentence to make sure that certain objectives are

12   achieved.  First, to properly acknowledge the nature,

13   seriousness and circumstances of this offense.  The government

14   wholeheartedly agrees with a word that the defense attorney used

15   throughout this presentation here today, a cycle.  It's ironic

16   that the very same age that Ms. Harris was when she became

17   involved in the sex industry is the same age that MC was when

18   Ms. Harris met her and actively participated in the prostitution

19   that MC engaged in.

20         I was struck by a phrase I have heard over the course of

21   my life.  Hurt people hurt people.  Ms. Harris has been through

22   some things and apparently we now have a victim who at the hands

23   of Ms. Harris went through something, at least as much as what

24   Ms. Harris went through at some point in her life.

25         Your Honor, we set forth in the sentencing memorandum

1    the facts of the offense that we believe we would present if

2    this case had gone to trial and we'll summarize them here to

3    show the seriousness of this.

4          When Ms. Harris and her co-conspirators first met MC,

5    they took the pictures, as the government already explained to

6    the Court, and then from that point on the conspiracy was on a

7    roll for about a two-day period.  MC had sex with about sixteen

8    different men over a two-day period almost non stop.  Very

9    little sleep and just a little bit of food to eat.  At one point

10   MC was taken to a club she couldn't even have gotten into

11   because of her age, and Ms. Harris and her co-conspirators

12   arranged for her to get access to that club so that she could

13   have sex with club patrons who may have had interest in having

14   sex with her.

15         At least on one occasion, and this is the occasion that

16   actually led to Ms. Harris's arrest as well as the arrest of Mr.

17   Pruitt and initially MC, you have Ms. Harris talking to the

18   undercover john who was an APD investigator named Mr. Summers

19   and saying to him not only here is a girl for you, but I'm

20   willing to do a sex act with you all and here is the amount of

21   money I want for it.  And at this point we know without a doubt

22   that Ms. Harris was aware of MC's status as a minor, and you

23   have at least at that point her actively putting herself out to

24   not only facilitate MC's involvement in these sex acts but her

25   participation in them.  Again, Your Honor, very serious offense,

1    and we believe that a 48-month sentence is necessary to properly

2    acknowledge the seriousness of what happened under the facts of

3    this case.

4         Also, Your Honor, we believe that sentence would be a

5    just punishment for Ms. Harris.  As the PSR indicates, she

6    really has never spent longer than it appears 18 days or so in

7    jail.  She's had a misdemeanor marijuana conviction as well as

8    the cocaine possession conviction.  There has never been a time

9    when she's been incarcerated, so while we understand one day of

10   jail may be too much, we don't believe that 12 months is enough

11   to really truly drive home the impact that what Ms. Harris was

12   involved in would have had/has had on MC and really what was

13   done in this case.  We believe a 48 month sentence will

14   hopefully deter her from engaging in acts of this type once she

15   is released from custody.  We hope that it will deter others who

16   may think that prostitution is a quick get rich scheme.  It's a

17   good and easy way to make money.  We hope they will see the

18   sentence this Court would impose and the sentence Ms. Harris

19   would serve and understand that anyone who tries to get another

20   person, especially a minor, to engage in sex for their financial

21   benefit would be prosecuted to the fullest extent of the law and

22   will be handled accordingly by the Court.

23        Your Honor, we believe there is also a protection of the

24   public aspect here.  As the government has already said, hurt

25   people hurt people.  Sounds like Ms. Harris has gone on, taken

1    some rehabilitative measures, but we do know if she is

2    incapacitated for a 48-month period, there will be at least four

3    years where another person like MC will not be subjected to the

4    similar crimes of this defendant.

5           Your Honor, this is a difficult case.  It's a tough case

6    and it's a tough case because of what MC had to go through.  We

7    would hope that with receiving the 48-month sentence the point

8    would be driven home to Ms. Harris.  We understand her history

9    and the fact that at some point, maybe most of her life, she was

10   a victim herself.  Those things are taken into consideration

11   with the 5K, as well as the way in which the government decided

12   to charge Ms. Harris.  We believe that a 48-month sentence is

13   what is appropriate here.  It will vindicate the victim in this

14   case, the 17-year-old little girl, not little girl, but the

15   17-year-old girl, MC, and we believe it will satisfy all the

16   sentencing factors that are set forth in 3553(A), and for that

17   reason we would ask that the Court sentence her accordingly.

18   And we also note for the record, just out of an abundance of

19   caution, that given this conviction, and we are sure defense

20   counsel has advised his client, Ms. Harris would be subject to

21   sex offender registration, and that's another aspect of her

22   sentence that we would hope would deter her from engaging in

23   future similar conduct.  Thank you, Your Honor.

24          MR. FINLAYSON:  Your Honor, I'm going to try to be

25   polite and not be emotional and try to be professional.  Hurt

1   people hurt people.  What does that mean?  It means we are going

2   to feel sorry for this person, but throw her in jail 4 years,

3   take her away from her daughter at six, who is at a crucial age,

4   that is going to help this cycle?  With all due respect, the

5   government is continuing to hurt.  Hurt people hurt people.  My

6   client was out there ten years in this world, and we are going

7   to vindicate MC, who is in this world for two days, maybe three.

8   I feel sorry for MC.  It was wrong.  It was bad.  She was

9   already dancing at private parties.  The city of Sandy Springs

10  charged her as an adult.  Under Georgia law she's an adult.

11  She's a victim and a defendant herself.  My client is a victim

12  and a defendant.  Giving my client 48 months, I don't think is

13  going to make MC happy, I don't think, and that's not our goal

14  or job here, to vindicate MC.  She is a victim.  She has rights

15  and she should never have been through this.  But my client

16  didn't ask to be molested by her own father when she was eight.

17  She didn't ask to be born to a mother who was a stripper at the

18  Gold Club.  My client didn't ask to be born into a world where

19  the only way out is drugs and prostitution.  Hurt people hurt

20  people, my God.  My client --

21        THE COURT:  Wait a minute.  Are these people back here

22  her relatives that have come here to support her?

23        MR. FINLAYSON:  I think there are some.

24        THE COURT:  Raise your hand.  Okay.  Well, that speaks

25  well of her.

1    MR. FINLAYSON:  I'm sorry, Judge.  I'll calm down.  Your

2  Honor, this thing, going to the club, and, Your Honor, I went to

3  that club.  Me and Mr. Holcomb, we took pictures of the club.

4  It's a trailer, Judge.  The club, Boom Boom, that is cited in

5  the complaint is a darn single wide mobile home trailer that was

6  in the middle of a construction site.  It was the most illegal,

7  illicit boot leg joint.  Actually I didn't go in.  I'm usually

8  pretty brave, but I ain't that brave, and the thing was shut

9  down within the week.  The club, Boom Boom, ain't no licensed

10  establishment that is going to ask anybody for a license, and

11  that's the truth.  We took the pictures and we showed it, and

12  they know it.  There wasn't any big scam, oh, we are going to

13  get this underage girl into the club, Boom Boom.

14    Your Honor, deterrence, my client has been deterred for

15  the last year as evidenced by the documents we have put into

16  evidence, as evidenced by the fact she's been on electronic

17  monitoring, house arrest for a year.  We have turned the corner

18  with this young woman.  Throw her into jail for 4 years, what is

19  she going to have when she gets out?  Is she going to be better

20  off after 4 years or worse off?  With all due respect, she'll be

21  worse off.  She won't be better off, and her daughter ain't

22  going to be better off.  If she was who she was two years ago,

23  if she was who she was during the time of this offense, I'd say

24  sure, put her away, her daughter will be better off.  But we

25  have turned that corner, Your Honor, and I think we are talking

1   overkill here.

2       I mean to hear the government say, well, this will be a

3   good message to others who think it's a good get rich quick

4   scheme, well, that seems to suggest MC thought it was a good get

5   rich scheme.  It seems to suggest my client thought it was a

6   good get rich quick scheme.  It's not good.  It's a terrible

7   life.  I'll be quiet.  Thank you.

8       THE COURT:  All right.  Let me proceed.  Pursuant to the

9   Sentencing Reform Act of 1984, it's the judgment of the Court

10  that the defendant, Marvis Nichole Harris, is hereby committed

11  to the Bureau of Prisons to be committed for a term of 48 months

12  on Count 1.  It's further ordered she pay the United States a

13  special assessment of $100.  The Court finds that she does not

14  have the ability to pay a fine and cost of incarceration and

15  that's waived.

16      All her right title and interest in the property

17  identified in the forfeiture is incorporated herein and is

18  forfeited.

19      Upon release from imprisonment she shall be placed on

20  supervised release for two years as to Count 1.  Within 72 hours

21  of release she shall report to the probation office in the

22  district to which she's released.  While on supervised release

23  the defendant shall not commit another federal, state or local

24  crime, comply with the standard conditions that have been

25  adopted by the Court and these additional conditions:  1.  The

1   defendant shall submit to drug testing as requested.  2.  The

2   defendant shall participate in a drug alcohol treatment program

3   and contribute to the cost and services of that treatment.  She

4   shall perform 50 hours of community service work.  4.  She shall

5   not possess or have under her control any firearm, dangerous

6   weapon, or other destructive device.  5.  She shall submit to a

7   search of her person or property at the request of the probation

8   officer.  And finally, she shall submit to the required DNA

9   testing pursuant to the statute and cooperate with the probation

10  officer in the collection of DNA.  Ms. Harris, do you understand

11  the sentence?

12          THE DEFENDANT:  Yes, sir, I do.

13          THE COURT:  Well, let's see, let me state for the

14  record.  She's 27 years old.  There are many factors to consider

15  in this, but she does have two prior drug convictions.  In this

16  particular case it is interesting to me considering some other

17  cases, I do have a victim in this case, whereas I recently

18  sentenced a person, a male about the same age, 6 years for just

19  viewing pornography, downloading on his computer and viewing

20  pornography, and others just for fantasizing and crossing state

21  lines to engage in sex with fictitious people.  So I find that

22  the sentence has a good bit of parity, in fact, in defendant's

23  favor.

24          I believe, considering the factors under 18 USC, section

25  3553, I believe this sentence fulfills those factors and is

1    really weighted in the defendant's favor.

2         Is there any objection by either side other than those

3    previously stated to the ultimate findings of the Court, the

4    guideline calculations to the sentence, or the manner in which

5    it's been pronounced?  On behalf of the government?

6         MS. HACKWORTH:  Your Honor, it's not an objection.  We

7    would just like for the Court, based on 18 USC 3553(D) as in dog

8    to advise Ms. Harris we believe she is required to register

9    under the Sex Offender Registration and Notification Act.  We

10   would like to advise her of that and include that as a condition

11   of her supervised release, that she comply with the provisions

12   of that act.

13        THE COURT:  Well, let's see, I believe one of the

14   conditions is that she follow the law.  All right.  Well, if

15   that act applies.  I don't know that I agree with all the

16   provisions of that act, but if that act applies to her, she

17   needs to follow that act, but I'm not going to make it an

18   express condition, just a general condition that she follow the

19   law, because I think there is going to be some questions.  All

20   right.  Any objections on behalf of the defendant?

21        MR. FINLAYSON:  Your Honor, we would renew our previous

22   objection.  We would object to the final sentence as being

23   procedurally and substantively unreasonable.  We submit our

24   proposed sentence of 12 months and a day would have been the

25   reasonable sentence in this case.

1          THE COURT:  Compared to other sentences.  I'll note for

2     the record, because I'm disturbed about some other sentences I

3     give and the statutes that we now keep working through on this,

4     but compared to other sentences, this sentence is a gift,

5     because there is a victim we can point to.  But at any rate,

6     your objection is noted for the record.

7          Let me advise the defendant, she has the right to

8     appeal.  She can appeal her conviction if she believes her

9     guilty plea is somehow unlawful or involuntary, or if there is

10     some other fundamental defect in the proceeding that was not

11     waived by the guilty plea.  Also she has a right to appeal the

12     sentence if she thinks that is contrary to the law.  She may

13     have waived some of those rights in her plea agreement and

14     generally those waivers are enforceable, but if she believes the

15     waivers are unenforceable she can present that theory to the

16     Appellate Court.  With few exceptions any notice of appeal must

17     be filed by the defendant, Ms. Harris, within 14 days of

18     judgment being entered in the case, and if she's unable to pay

19     the cost of an appeal she may apply for leave to file her appeal

20     without paying costs, and if she requests the Clerk of the Court

21     will prepare and file a notice of appeal on her behalf.  Ms.

22     Harris, do you understand your right to an appeal?

23          THE DEFENDANT:  Yes, sir, I do.

24          THE COURT:  All right.  I will put her on voluntary

25     surrender.

1        MR. FINLAYSON:  Thank you, Judge.

2        THE COURT:  And I'll also recommend, this isn't going to

3   help you much, particularly for considering locations for female

4   prisons, but I'll recommend that she be placed close to Atlanta

5   for the convenience of her family, unless you have some other

6   place that would be more convenient for her family.

7        MR. FINLAYSON:  A halfway house would be more

8   convenient, but I don't have any other -- unfortunately, I think

9   the Court is absolutely correct, there is no good answer there.

10  I think as close as possible.

11       THE COURT:  Probably Florida is where she will be,

12  Marianna in Florida.

13       MR. FINLAYSON:  You're probably right.

14       THE COURT:  Okay.  Anything else I need to take up in

15  Ms. Harris's case?

16       MS. HACKWORTH:  No, Your Honor.

17       THE COURT:  All right.  Ms. Harris, follow the

18  instructions of your attorney and the probation department and

19  report in accordance with the voluntary surrender.  Now, this

20  has taken longer than I thought.  There is a ceremony and I

21  still have another sentence.

22       COURTROOM DEPUTY:  And a plea.

23       THE COURT:  And a plea.

24       MR. FINLAYSON:  Could we get the drug program?

25       THE COURT:  That's fine.  Put the drug program in.  That

1    might get her out a little sooner.

2        MR. FINLAYSON:  Appreciate that, Judge.

3

4                    C E R T I F I C A T E

5

6        I, Martha J. Frutchey, do hereby certify that I am a U.S.

     District Court Reporter for the Northern District of Georgia,

7    Atlanta Division; that I reported the foregoing and the same is

8    a true and accurate transcription of my shorthand notes as

9    taken aforesaid.

10

11

12        _____

13                    Martha J. Frutchey

14

15

16

17

18

19

20

21

22

23

24

25